UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK                        **NOT FOR PUBLICATION**
---------------------------------------------------------------------
In re
     JAMES HARRELL GREASON                        Case No. 07-00357K
                                Debtor
---------------------------------------------------------------------
SCHATZMAN & SCHATZMAN, P.A.
                                Plaintiff

        -vs-                                          AP No. 07-1077 K

JAMES HARRELL GREASON
                                Defendant
---------------------------------------------------------------------

Jeffrey N. Schatzman, Esq.
Schatzman & Schatzman, PA
9990 S.W. 77th Avenue, Penthouse 2
Miami, FL 33156

Attorney for Plaintiff

James Harrell Greason, Esq.
83 N. Cayuga Road
Williamsville, NY 14221

Defendant, Pro Se

OPINION AND ORDER

       The Debtor is an attorney. He represented a client during seven years of litigation

in a state court in Florida, at the conclusion of which both he and his client were sanctioned

under the state law equivalent of Federal Rules 11 and 37. A judgment was entered against him

personally for over $99,000. He filed for relief under Chapter 7 here.

       The law firm for the state court opponent took an assignment of its client's claim

against the Debtor, and filed a timely dischargeability complaint. The totality of the operative paragraphs of the sole cause of action in the original Complaint is this:

> 5. Plaintiff is a creditor of the debtor, having obtained a judgment against the Debtor in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "State Court") in the sum of $99,173.13, plus post-judgment interest (the "Judgment"). A true and correct copy of the Judgment is attached hereto and made a part hereof as Exhibit "A".
>
> 6. The Judgment was rendered against the Debtor for sanctions imposed by the State Court pursuant to Florida's Civil Theft Statute, § 772.11, Fla. Stat., and § 57.105, Fla. Stat. (Florida's version of Federal Rule 11), for filing and abandoning frivolous civil theft claims and under § 57.105 for discovery abuses, misrepresentations to the Court and opposing counsel, violating Court orders and obstructing the opposing parties' attempts to conduct legitimate discovery.
>
> 7. The Debtor is an attorney and was acting in such capacity as a fiduciary in the State Court proceeding and in such fiduciary capacity did commit fraud and defalcation upon the State Court, opposing counsel and the parties resulting in the damages award in the Judgment.
>
> 8. Pursuant to 11 U.S.C. § 523(a)(4), Plaintiff's Judgment is nondischargeable.
>
> Wherefore, Plaintiff, SCHATZMAN & SCHATZMAN, P.A. prays this Court enters Judgment in favor of Plaintiff determining that its claim against the Debtor is nondischargeable and for such other and further relief that this Court deems just and proper.

The Complaint was filed on May 7, 2007.

The Debtor timely Answered, but due to Court error, the matter was not promptly scheduled for a Rule 16 conference; that did not occur until February 20, 2008.

The Debtor then moved for dismissal/summary judgment on the grounds that he was not a fiduciary. The Plaintiff cross-moved for leave to amend the complaint to add this cause of action:

>    13. As more particularly described in the Judgment, during proceedings in the State Court, both at the trial level and on appeals, the Debtor wilfully and maliciously misrepresented material facts to the Court and Plaintiff, abused the discovery process, delayed the proceedings with redundant and baseless pleadings and motions, disregarded orders of the court, all causing damages to Plaintiff and its clients in the form of having to incur unnecessary litigation time and expense.
>
>    14. As a result of the Debtor's wilful and malicious acts, Plaintiff has been damaged in the amount of the sums identified in the Judgment, all of which are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

The Court refused to hear the cross-motion until the Plaintiffs responded to the substance of the Debtor's motion.

For reasons to be stated later, the "fiduciary" claim will be dismissed, leaving the matter of the amendment.

That presents an interesting (but seemingly *sui-generis*) question regarding "relation back" of amended pleadings after the running of a statute of limitations.

The general principles are well-examined by Judge Shiff in *In re Austin Driveway*, 179 B.R. 390 (Bankr. D.Conn. 1995), and this writer will presume familiarity with the principles and Second Circuit authorities discussed in that decision.

The question is simple to state, but hard to answer. The question is whether the initial Complaint only placed the state court judgment at issue (its meaning, its content, and its consequences), or whether it sufficed to place the Debtor on notice that the Debtor might rightly be made to defend again against all of the allegations that led to the judgment.

Clearly, if the Complaint here had alleged specific conduct of the Debtor on specific dates, the Plaintiff would have a much easier time of convincing this court that the Debtor's conduct in the litigation is at issue here, and that only the theory of recovery is changed

by the amended Complaint.

But the Debtor essentially argues that the only matter properly pled here is the fact that he suffered the entry of a sanctions order. The initial Complaint characterized that order as establishing liability on his part for breach of fiduciary duty; he was not on notice, he claims, that all of his conduct during seven years of litigation would be claimed here to have constituted "wilful and malicious injury" to his client's opponent.

This Court agrees with the Debtor. Though the Amendment is permitted, it will not "relate back."

## SUMMARY OF ANALYSIS

As noted above, this is not an easy question to answer. Analysis is aided by hypotheticals. At one extreme along a spectrum is that of a money judgment on a contract debt. No knowledgeable bankruptcy lawyer would plead that such a judgment constituted a finding of, for example, § 523(a)(2) fraud. Rather, she <u>here</u> would plead facts distinct-from and in addition-to the state court pleading on the unpaid account.

At the other extreme would be the hypothetical of a conviction for violation of criminal laws. As bankruptcy counsel for the victim, she need plead nothing more than the fact of that conviction in a § 523(a)(2), (4), or (6) complaint.

There is much territory in-between, and the matter at Bar lies somewhere in that terrain.

The judgment at issue clearly did not establish a "wilful and malicious injury."

(Indeed, the Debtor asserts (to the contrary) that it was a preclusive ruling that he was merely negligent in the way he represented his client, and that any injury to his client's <u>opponent</u>, was a result only of negligence.)

Though this court disagrees with that characterization, a "wilful and malicious injury" can be established here <u>only</u> if this Court permits "relation-back" of an amended Complaint that implicates all of the conduct that was not pled here in the timely Complaint.

Did the incorporation of the sanctions <u>award</u> incorporate all of the allegations upon which sanctions were sought nearly seven years ago, for purposes of "notice pleading" under Rule 15? Though a close question, the Court thinks not.

Rather, the Court has considered another hypothetical which it believes is comparable to this case, at least rhetorically.

Consider (rhetorically) a judgment of replevin, wherein a court finds that a defendant has "wrongly" withheld possession of property owned by the plaintiff. In the bankruptcy of the defendant, the plaintiff pleads only that the judgment established a breach of fiduciary duty, mistakenly believing that such a finding was implicit in the findings (when in fact there is no such implication in the words "wrongly withheld"). After the § 523(c) bar date, the Defendant moves for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P. And the plaintiff responds, "Wait. We didn't mean to plead the decision itself. What we meant to plead was all the background circumstances that led to the ruling, such as how the defendant came to possess the property in the first place, all the promises he made during my efforts to get the property back, etc. The defendant knows what I was really talking about. He had the requisite

notice for notice pleading. We can prove that he was in a position of trust."

The logical question then would be "Then why didn't you plead that in the first place?"

And there, as here, the answer is "Inadvertence, Your Honor. We only intended the decision to stand as a capsule summary of the fact that the defendant behaved badly throughout our relationship. That should be enough under federal 'notice pleading'."

That response would be clearly wrong if, after the § 523 bar date, the debtor innocently threw away documents that would have decisively proven that he was not a fiduciary. "Notice pleading" requires that the defendant receive adequate notice as to what evidence he should retain for an effective defense. (See *In re Austin Driveway Services, Inc.*, 179 B.R. 390, 399 (Bankr. D. Conn. 1995).)

In this writer's view, the response would also be wrong if, in reliance on the initial complaint the debtor, anxious for his "fresh start" in bankruptcy and confident of his ability to demonstrate that the decision did not evidence any fiduciary duty, settled other matters or took other steps to implement the "fresh start." As to this hypothetical, the policy of the Bankruptcy Code, with its very short § 523(c) limitations period (designed to facilitate the "fresh start") should "trump" the policy of "relation back," which is designed to soften the effect of statutes of limitations. (As to the latter, see *Austin Driveway, supra*, 179 B.R. at 401).

For the Court to conduct evidentiary hearings into the ways in which a debtor has taken steps to rebuild his life in light of what he saw in any § 523 complaints, in order to determine the extent of prejudice to him if the court were to utilize the federal rules

interpretations usually applied outside of bankruptcy, would itself fly in the face of Bankruptcy Policy.

The simple solution for creditors is to plead what they mean to plead. The proper pleadings of this case need not have said more than:

"1. The Debtor behaved badly in many ways over the course of seven years of litigation, some of which (by the way) resulted in a sanctions award against him.

"2. Some of his behavior breached his duties to, or wilfully and maliciously damaged, our client (whose claim we have taken by assignment).

"3. The details of the bad behavior are contained in our motion for sanctions, appended hereto as Exhibit [X].

"Wherefore we pray for judgment under 11 U.S.C. § 523(a)(2), (4), or (6)."

The Motion to Amend asks the court to pretend that the initial complaint was as informative as the above - - that it provided as much "notice" as the above.

The Court disagrees.[1]

The Motion to Amend is granted, but the § 523(a)(6) cause shall not relate-back, is time-barred and is dismissed on that basis.

Furthermore, the initial complaint based solely on § 523(a)(4) is dismissed for the reasons set forth in the Debtor's Motion for Judgment on the Pleadings.

Subject to timely request for review, this Adversary Proceeding is dismissed on

---

[1] Recently, this Court held a pre-trial conference upon just such a well-pleaded Complaint. It is appended hereto as Appendix "A."

the merits, and closed. Each side shall bear its own costs.

## DETAILED ANALYSIS

We must begin by examining the parties' arguments that do not lead us to a disposition of the matter.

Firstly, the Debtor argues that because the Plaintiff took an assignment of the sanctions award here, it cannot prevail under § 523(a)(6), because personal injury causes of action are not assignable under the law of Florida or New York.

Although it is true that New York General Obligations Law § 13-101.1 prohibits the assignment of any claim or demand to recover damages for a personal injury, and though it appears to be similarly true as a matter of Florida case law (see *Forgione v. Dennis Pirtle Agency*, 93 F.3d 758, CA 11, 1996) at page 760, stating "As we understand it, under Florida Law, purely personal tort claims cannot be assigned. Examples of such unassignable personal tort claims are personal injury claims, including claims of medical malpractice, and claims for intentional infliction of emotional distress . . . ."), both 11 U.S.C. § 523(a)(6) and its 1898 Act predecessor, excluded from discharge not only personal injury claims, but also claims for wilful and malicious injury to "property" of the claimant. Given the vast panoply of forms of economic harm that have been found to give rise to non-dischargeability under § 523(a)(6), there seems to be no reason to consider a "wilful and malicious injury" to a claimant's bank account (in the form of causing it to have to pay unnecessary legal bills) as being something different from other recognized forms of "property" such as a trademark that has been wilfully and maliciously

infringed, or a building that has been wilfully and maliciously vandalized.  See e.g., *In re Klayminc*, 37 B.R. 728 (Bankr. S.D. Fla. 1984), *In re Purk*, 28 B.R. 234 (Bankr. S.D. Ohio 1983).

Thus the Court concludes that the fact that personal injury claims may not be assigned in Florida or in New York is not a barrier to this Plaintiff's effort to establish that the claim it has obtained by assignment is a claim that should be ruled to be non-dischargeable for "wilful and malicious injury" to the property of the assignor.

Next, and somewhat related to the first point, is the Debtor's argument to an effect that the Court views in a somewhat different light than the Debtor states.  To the Court, the Debtor's argument is that the Plaintiff here is seeking to be made more than fully whole.  The Plaintiff law firm here took the assignment of its client's sanctions award against the Debtor as part of a complete satisfaction of its client's obligations to pay attorneys fees and expenses to its own attorney.  The Debtor's notion is that whatever the firm accepted in full payment, it accepted.  It no longer has any economic loss.  The Court might agree with this argument were the firm to have acquired the claim as a third party speculator.  That might well place the matter within the proscriptions of barratry or champerty.  But the Plaintiff was not a stranger to the lawsuit giving rise to the sanctions award.  Indeed, it prosecuted the request for sanctions on behalf of its client, and appears to have taken over, for its client, the risk of collectibility of the sanctions award, as part and parcel of its final resolution of the fee and expense bills it has sent to its client in connection with the seven years of litigation of the underlying matter.

Under those circumstances, it appears to the Court that the Plaintiff is not

foreclosed from seeking to enforce the sanctions award that it took by assignment from its client.

Next, and unlike the previous two arguments which, as so analyzed, do <u>not</u> lead us in a dispositive direction, we address an argument that <u>is partially dispositive</u>, once it is rejected, as the Court will now so reject it. That is the Plaintiff's argument that a wilful violation of the Code of Professional Responsibility for Attorneys and of Court Rules, once reduced to a monetary judgment by a sanctions award, gives rise to nondischargeability under 11 U.S.C. § 523(a)(4), as a liability on a debt for breach of fiduciary obligations. This argument by the Plaintiff is, simply, too bizarre for words. It is flatly rejected. The Plaintiff cites not a single case supporting such a proposition from any state. Rather, the argument is a semi-clever attempt at wishful thinking.

Consider a certain analogy against attorneys who had been found liable for abuse of process or malicious prosecution in their representation of a client in a prior, failed, civil action. Some courts have stated that an attorney who acts with the authority of his client is not liable to a third party in an action for malicious prosecution. That is not the majority view. However, one such court has reasoned in a manner that persuades this Court that the Plaintiff's "fiduciary duty" argument not only lacks authority in law, but would be horrendous policy. In that other context (the context of determining whether the attorney can be held liable for a malicious prosecution when he has acted with the authority of his client and has no personal interest in the litigation), the Court in *W.D.G., Inc. v. Mutual Manufacturing and Supply Company*, 5 O.O.3d 397, 399-400, stated:

> The better rule, we believe, is that an attorney who acts with the authority of his client is not liable to a third party in an action for malicious prosecution.

>Some immunity from being sued by persons must be afforded an attorney so that he may properly represent his client. To allow indiscriminate third party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to afford proper representation to his client in fear of some third party action against the attorney himself.
>
>An attorney does have an obligation to the public and to his profession to act honestly, completely, in good faith, and without malice in all the activities he undertakes. This duty has been set forth in the Code of Professional Responsibility adopted by the Supreme Court of Ohio and is enforceable by disciplinary proceedings against the attorney, including suspension from the practice of law or permanent disbarment.
>
>As a general rule, an attorney is immune from liability to third persons arising from the performance of the attorney's professional activities as an attorney on behalf of, and with the knowledge of, his client, unless such third person is in privity with the client. There are no special circumstances alleged in [this] complaint to give rise to the application of other than the general rules than an attorney is not liable, except to his client or those in privity with his client, for an injury allegedly arising out of performance of professional activities by the attorney.

To be sure, as noted above, this is not the majority view. Moreover, the acceptability of sanctions awards issued directly against one's opponent's attorney is at odds with the above view. It should further be pointed out that it has been said that addressing attorney misconduct by such sanctions awards is preferable (in the interest of judicial economy) to separate litigation against the attorney for abuse of process or malicious prosecution. See 52 Am. Jur. 2d Malicious Prosecution § 5 (2000).

However, to say that every dollar of unnecessary attorneys fees or expenses that a lawyer's client's opponent suffers as a result of the lawyer's having overstepped the bounds of zealous representation of his or her client is instantly and magically transformed into a dollar which the lawyer owes his or her client's opponent as a "fiduciary" thereto, is a trail this Court

will not blaze.

Thus, the Debtor's motion to dismiss the original Complaint is granted.

Finally, we may presume that the Plaintiff is entitled to amend. So we are left solely with the question of whether the Motion to Amend the Complaint to add the § 523(a)(6) cause of action should relate-back or not.

Argument was heard on May 28, 2008. (There were further submissions last summer.) At that argument, it became apparent that the Plaintiff law firm interprets its draftsmanship of the original Complaint differently than the Court interpreted it prior to such argument. The Plaintiff argues that the original Complaint effectively pled the conduct that was the subject of the state court's 20-page Decision and Judgment, whereas the Court thought that the Plaintiff effectively pled only the existence of that-page decision, and the state court's findings. Thus the Plaintiff argues that its proposed Amended Complaint adds only an alternative legal theory as to how this Court should view the Debtor's conduct <u>as such conduct was recited in</u> the 20-page Decision and Judgment.

Further, the Plaintiff argues that this Court should first determine whether preclusive effect, in its favor, should be given to the 20-page decision, and, if not, then this Court should permit it to re-litigate here, the Debtor's conduct, under § 523(a)(6).

The Debtor, of course, had no difficulty conceding the existence and content of the 20-page decision, and was properly confident that he would defeat the § 523(a)(4) cause of action as a matter of law. He does not concede the propriety of the proffered new cause of action, but appears confident that the 20-page decision not only does not sustain a § 523(a)(6)

cause of action, but actually constitutes a ruling <u>against</u> any possible such cause of action; a ruling that he argues must be given preclusion effect here, so rendering the proposed amendment "futile."

In no event does the Debtor concede that the original Complaint (or the Amended Complaint, for that matter) gave him notice that the Plaintiff intended him to defend for § 523(a)(6) purposes here, the very same underlying conduct that he defended in state court in the sanctions proceedings.

The Debtor, having defeated the notion that one attorney has a <u>fiduciary</u> duty (for § 523(a)(4) purposes) to his client's opponent, in litigation, to refrain from sanctionable conduct, it appears that the Motion for Leave to Amend the Complaint places the <u>Rules</u> (which favor a liberal reading of Complaints (Rule 8) and liberal allowance of amendments thereto (Rule 15 and BR 7015)) into major conflict with the "fresh start" policy manifested in the <u>statute</u> (§ 523(c)).

It is true, of course, that the <u>statute</u> does not state the deadline for dischargeability complaints - - it is left to rulemaking. (See H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 363-365). But dischargeability litigation is not "ordinary" civil litigation. "Ordinary" statutes of limitations typically are measured in years,[2] and their purpose is finality. (See 51 Am.Jur.2d Limitation of Actions §§ 13, 16 (2000)). It is beyond cavil that the purpose of § 523(c) was not to end a long period of uncertainty, but rather a prompt "fresh start" for debtors - - the limitations period is 60 days after the <u>first date set</u> for the § 341 meeting. (Rule 4007 (c)).

---

[2] But see CPLR Art. 78's 4-month limitation.

"Notice pleading" requires a short and plain statement of the claim showing that the pleader is entitled to relief, and is adopted in federal practice by Rule 8(a)(2) Fed.R.Civ.P.

The question before the Court is "notice of what?"

The initial Complaint here put the Debtor on notice of two things: (1) a 20-page court decision rendered judgment against him, and (2) the Plaintiff believed that that decision and judgment established fiduciary defalcation by the Defendant that is nondischargeable under 11 U.S.C. § 523(a)(4).

After the Defendant moved to dismiss on the grounds that neither the decision nor the applicable law established any fiduciary duty to breach, the Plaintiff sought to amend, claiming that a § 523(a)(6) cause was "inadvertently" omitted from the initial Complaint.

The Debtor asserts that it wasn't inadvertent. It was a scheme or artifice to harass and beat the Debtor into the ground, and that to allow the amendment would be prejudicial and would not pass the "as justice requires" test of Rule 15.

There has been no evidentiary hearing into how or why there was no §523(a)(6) cause in the original complaint.

Were there such a hearing, and were the Court to agree with the Debtor, it would be clear that either the Amended Complaint should not be allowed, or that if allowed, it should not be permitted to "relate back" to a time before the very short § 523(c) limitations period for such complaints.

At this point, then, there might be a question as to whether we should litigate the history of the pleadings.

But because the sum and substance of this Adversary Proceeding is sanctions litigation against an attorney acting solely as an advocate for his client, and because the Plaintiff is a law firm prosecuting on its own behalf, this Court will put an end to this litigation.

Candor, in fact, requires that this writer confess that there is a core issue that is still elusive (to me), only the edges of which have ever been presented here, despite more than 17 years on the Bench.

*In re Germain,* 249 B.R. 47 (Bankr. W.D.N.Y. 2000), "nibbled" on one edge. A rogue attorney (since disbarred in this and some other states) commenced frivolous lawsuits against other counsel in an effort to represent clients against whom the other counsel had pursued collection remedies. The other counsel suffered large increases in insurance premiums as a result of the lawsuits, and pursued the rogue lawyer's <u>client</u> here. This Court ruled that the Debtor/Client, who did not have knowledge of, give her consent to, nor ratify the lawsuit filed by the rogue lawyer, could not be held derivatively liable for damages caused by the lawyers' abuse of process.

In *In re Lenahan, Gardin v. Lenahan, et al.* 05-70108 MJK another "edge" was addressed. Rogue attorneys violated the FDCPA in attempting to collect their client's debts. This Court ruled that damages arising from the wilful and malicious conduct of the attorney/debtors were non-dischargeable in their bankruptcy case.

In *Taylor Farms, Inc.*, 92-10971 MJK, a bank creditor opposed a fee application of a Chapter 12 debtor's attorney, alleging that the bounds of advocacy had been exceeded. This Court ruled that so long as counsel acts within the ethical considerations of the Code of

Professional Responsibility, even zealous representation in the form of extreme posturing would not be punished.

In *In re Corson Manufacturing Co.* 99-16855 MJK, this Court awarded $147,635.74 in sanctions against special counsel for a Chapter 7 Trustee plaintiff, stating that "plaintiff's counsel got caught time and time again having made misrepresentations about the completeness of what was provided . . . got caught misrepresenting the stated evidence to opposing counsel and to the Court . . . . . . . To get discovery done required that the Court and defendant's counsel overcome the machinations, obfuscations and obstinacy of plaintiff's counsel." *Corson Manufacturing Company*, 99-16855 MJK; *Brick v. HSBC Bank, et al.*; AP No. 00-1366 Transcript of Bench Decision of July 25, 2003.

In *Germaine*, the potential victims of the rogue attorney's conduct were the client of that attorney and opposing counsel. In *Lenahan*, it was the client of opposing counsel, as (purportedly) would be the case in *Taylor Farms* and *Corson*.

When one tries to put a focus on these tangential rulings, what seems to rest unexplored is the special case of one lawyer trying to collect from another lawyer.

On the one hand it is facile to say that to the extent that the profession fails to regulate itself (*Germaine*), that becomes a lawyer's cost of doing business - - mere overhead. On the other hand, it is commendable that the Plaintiff here "took-out" its client's position as to sanctions; that is to be encouraged.

This writer could offer (as could any bankruptcy judge) countless pages on the "fresh start" doctrine. But it is, after all, "doctrine." It needs no exposition here.

And so where, as here, the Plaintiff is a law firm, and where, as here, the original Complaint did not place the Debtor (who, the Court knows, is also a lawyer) on notice that he would have to defend anything more than the assertion that the 20-page decision constituted a finding of damages for a § 523(a)(4) breach of fiduciary duty, the Court could find that justice does <u>not</u> require allowance of the amendment, given the fresh start doctrine.  This would be decided as a Rule 15(a) matter.  And the Motion to Amend could be denied.

But here, the Court agrees that the amendment, if allowed, would be futile because it cannot relate-back.

The Court views lawyers' conduct in the representation of clients who are "merely" clients (not relatives, business partners, etc.) in judicial proceedings (as opposed, for example, to non-judicial foreclosures) to be a special category of human activity.  How can it ever be said that what an attorney does for a client in a court is <u>intended</u> to <u>cause injury</u> to his client's <u>opponent,</u> and <u>lacks</u> <u>just cause or excuse</u>?"  With the possible exception of abuse of process (discussed above) it cannot be so said.

On the other hand, there can be no doubt that wilful disobedience of a <u>court order</u> by an attorney could fit this definition of "malicious."  (See *Behn*, 242  B.R. 229 for the general proposition that wilful disobedience of a court order can be found to be a "wilful and malicious injury" despite noble motives.)  But pushing or exceeding the limits of zealous advocacy as defined by Codes of Professional Responsibility or court rules are, typically, the domain of Grievance Committees or other disciplinary bodies, not the courts of bankruptcy in dischargeability litigation. A lawyer who pushes too far may suffer disciplinary action that may

cost the lawyer his or her license to practice law, may suffer a money judgment (as here), and the need to file personal bankruptcy (as here).  But, to place him or her at risk of both loss of license <u>and</u> nondischargeability of the monetary judgment goes too far toward chilling the zealous representation of clients upon which justice so often depends.

Furthermore, in this particular case, the State Court, in sanctioning the Debtor, ruled only that he had not carried his burden of proving his own "good faith." Lack of "good faith" is not, *ipso facto*, a "wilful and malicious" activity.

Indeed, such proof might be privileged.  If one hypothesizes a <u>client</u> who at all times lied to his counsel and so directed his counsel to act as his "tool" in committing "wilful and malicious" acts, how is the lawyer to get around the privilege in a § 523(a)(6) action in the lawyer's own bankruptcy?  Here it seems that the privilege might have been waived in the state court.  But the notion that an attorney must subpoena his own client and establish that that client signed, for example, false oaths, would not serve the social policy of hiring lawyers to resolve disputes in courts of law, rather than in the streets at "High Noon."

The "special case" of human activity that is the practice of law requires that lawyers accept as "overhead" some costs of other lawyers' overreaching, in this Court's view.

It is for the legal profession to regulate itself, and for lawyers to accept, as the cost of doing business, the extent to which the profession fails to do so.

When it does regulate itself, it often does so in the form of court orders directed at a particular attorney or firm.  Just as in the *Behn* case this Court found that a wilful violation of a Court order by a <u>client</u> was a "wilful and malicious injury," this Court would similarly find as to

a lawyer representing a client, if that were properly pled, for it is the Court's view that disobedience of a court order is never justified by a client's instructions. Rather, the lawyer must withdraw. But if such was pled here at all, it was pled far too late as a § 523(a)(6) cause of action.

## CONCLUSION

The Debtor's Motion to Dismiss, etc. the § 523(a)(4) claim is granted for the reasons argued by the Debtor. The "fiduciary" claim is without any foundation in law or policy.

The Plaintiff's Motion to Amend the complaint is granted, but does not "relate back" and is therefore "futile" because it is untimely.

This Adversary Proceeding is dismissed on the merits. The parties shall bear their own costs.

SO ORDERED.

Dated:    Buffalo, New York
          March 10, 2009

                                                s/Michael J. Kaplan
                                                _____
                                                U.S.B.J.